**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1100
_____

UNITED STATES OF AMERICA

v.

OLUGBENGA LAWAL,
a/k/a Razak Aolugbengela,
Appellant
_____

On Appeal from the United States District Court
for the District of Delaware
District Court No. 1:22-cr-00011-001
District Judge:  Honorable Maryellen Noreika
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 16, 2025
_____

Before:  PHIPPS, FREEMAN, and CHUNG, <u>Circuit Judges</u>

(Filed   March 10, 2025)
_____

OPINION[1]
_____

CHUNG, <u>Circuit Judge</u>.

---

[1]     This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Olugbenga Lawal was found guilty of conspiracy to commit money laundering after a jury trial. He filed a motion for acquittal and, in the alternative, for a new trial. The District Court denied the motion. For the reasons set forth below, we will affirm.

I.    BACKGROUND[2]

Olugbenga Lawal was convicted of one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). Evidence at trial reflected that the leader of the conspiracy was an individual referred to as "Classic Baggie," who led a criminal organization based in Nigeria. Lawal was based in Indiana and his co-defendants Michael Hermann and other members of the "Miami Crew" were based in Florida. Classic Baggie and his organization made millions of dollars through internet-based fraud schemes, including romance fraud. The Miami Crew would send Lawal illicit proceeds from these fraud schemes at the direction of Classic Baggie, who referred to Lawal as his "partner … [i]n the romance fraud thing." Appx. 371. Fraud victims sometimes directly sent money to Lawal, and the evidence reflected that Lawal had direct knowledge of these deposits. After receipt, Lawal would help repatriate the money back to Nigeria through currency transactions and by purchasing cars in the United States and shipping the cars to Nigeria.

Lawal and his co-defendants used a number of accounts held by shell entities to effect the involved transactions. Lawal primarily used accounts held by himself and a shell company he registered called Luxe Logistics LLC, as well as the bank account of

---

[2]    Because we write for the parties, we recite only facts pertinent to our decision.

2

Opeyemi Opaleye.  Opaleye was an automobile exporter who purchased cars in the

United States for customers in Nigeria and shipped the cars to Nigeria.  This made

Opaleye a convenient channel through which Lawal could take illicit United States funds

from crime victims and convert them to Nigerian Naira for Classic Baggie.[3]

After Lawal was found guilty, he filed a motion for judgment of acquittal under

Federal Rule of Criminal Procedure 29, or, in the alternative, a new trial under Federal

Rule of Criminal Procedure 33.  The District Court denied his motion.  Lawal timely

appealed.

II.     DISCUSSION[4]

Lawal argues that his motion for a judgment of acquittal should have been granted

because there was neither sufficient evidence that he knew the illicit nature of the

proceeds, nor that he joined the conspiracy knowing of its illegal purpose and with the

intent to further that purpose.  He also argues that we should grant a new trial because the

verdict is against the weight of the evidence at trial.  We disagree.

A.      Motion for Acquittal

The government charged Lawal with conspiracy to commit money laundering;

---

[3]     For instance, Lawal would deposit checks into Opaleye's United States account
and Opaleye would then transfer an equivalent amount of Naira from Opaleye's Nigerian
account to a Nigerian account held by Lawal.  This allowed illicit proceeds to be
converted into Naira without the proceeds being directly traceable to Nigerian accounts
and without crossing international borders.

[4]     The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction
under 18 U.S.C. § 1291.

specifically, that Lawal conspired with others to achieve the criminal purpose of concealment money laundering or spending money laundering.[5]  To convict Lawal of conspiracy to commit either form of money laundering, the jury had to find with sufficient evidence that (1) an agreement was formed between two or more persons to achieve the specified money laundering purpose(s); (2) Lawal knowingly joined the conspiracy intending to achieve its purpose(s); and (3) Lawal knew of the criminal purpose(s) of the conspiracy.  United States v. Fallon, 61 F.4th 95, 115 (3d Cir. 2023).  The jury found Lawal guilty under both theories of the government's case, meaning they unanimously concluded that he joined the conspiracy knowing both its purpose to commit spending money laundering and to commit concealment money laundering.

We review "the grant or denial of a motion for judgment of acquittal" de novo "and independently appl[y] the same standard as the district court."  United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005).  Therefore, we "review the record in the light

---

[5]     The elements of concealment money laundering are that (1) the defendant conducted or attempted to conduct a financial transaction; (2) involving the proceeds of a specified unlawful activity; (3) with knowledge that the transaction involves the proceeds of some unlawful activity; and (4) with knowledge that the transaction was designed in whole or in part to conceal the nature, location, source, ownership or control of the proceeds of that activity.  Fallon, 61 F.4th at 116.  The elements of spending money laundering are "(1) the defendant engaged or attempted to engage in a monetary transaction; (2) involving criminally derived property of at least $10,000; (3) that the property was in fact derived from specified unlawful activity; (4) that the defendant acted knowingly, that is, with knowledge that the property was derived from the proceeds of a criminal offense; and (5) that the transaction occurred in the United States."  United States v. Greenidge, 495 F.3d 85, 100 (3d Cir. 2007) (footnote omitted); see 18 U.S.C. § 1957.

most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt based on the available evidence. A finding of insufficiency should be confined to cases where the prosecution's failure is clear." Id. (internal quotations and citations omitted).

        1.      The Evidence was Sufficient to Support Finding Lawal Knowingly Joined the Conspiracy.

Lawal largely claims that the circumstantial nature of the evidence offered against him made it insufficient to raise a reasonable inference that he knew the illicit nature of the proceeds he handled and that he knowingly joined the conspiracy knowing of either alleged criminal purpose.[6] United States v. Caraballo-Rodriguez, 726 F.3d 418, 425 (3d Cir. 2013) ("Circumstantial inferences drawn from the evidence must bear a logical or convincing connection to established fact." (internal quotations omitted)). We disagree.

The government introduced testimony from Hermann that Classic Baggie referred to Lawal as his "partner" in the romance fraud scheme, direct evidence that Lawal knew of the fraudulent origin of the money he handled. Additional evidence at trial reflected a level of trust from Classic Baggie and activity by Lawal that a rational juror could have found confirmed Classic Baggie's statement. For instance, though Lawal's purported business was selling cars, only about $1 million of the approximate $2 million he received in criminal proceeds was used to purchase vehicles. Of the cars purchased, the

---

[6]    Lawal does not contest that the funds were, in fact, the proceeds of a specific unlawful activity (wire fraud). Rather, he asserts that the evidence was insufficient to conclude he knew the criminal nature of the proceeds, an element of both concealment money laundering and spending money laundering.

evidence did not reflect that he provided any vehicle to a victim in exchange for any funds deposited, and that, to the contrary, the subject lines on victims' checks reflected other intended purposes for the funds such as "house remodeling" or "legal."

Furthermore, after receiving notice from banks on multiple occasions that his accounts were being closed due to suspected criminal activity, activities that a rational juror could conclude would lead an innocent dupe to cease business with Classic Baggie,[7] Lawal continued to open accounts, facilitate transactions, register a shell company, buy cars, and engage in currency exchanges. Similarly, the jurors considered testimony that Classic Baggie funneled substantial sums of money to Lawal. Rational jurors could conclude that such trust would not be instilled in an unwitting figure, who could inadvertently jeopardize the flow of millions of dollars in proceeds back to Classic Baggie.

Opaleye testified that Lawal had direct access and control of Opaleye's account and used that control to deposit funds that the evidence established were illicit proceeds. In addition, a romance-fraud victim testified that he deposited a check directly into Opaleye's account, that he photographed the deposit receipt, and that, in general, he took such photographs to show his catfish[8] that he had made the deposits. And the evidence showed that Lawal possessed the photograph taken by the romance-fraud victim. Given

---

[7]    This is especially true given that the jury heard this was Opaleye's course of conduct once he was alerted that illicit funds may have been deposited into this account.

[8]    A person assuming a false identity and feigning interest in a romance-fraud victim.

6

that Lawal possessed the receipt photo and given that he was the only member of the conspiracy with direct access to Opaleye's account, a rational juror could infer that Lawal had direct contact with a romance-fraud victim (or his catfish), shepherding the transfer of funds to Opaleye's account.

Finally, there was also testimony from a money laundering expert that Lawal's conduct was consistent with the money laundering trade and *inconsistent* with legitimate business operations, e.g., dissipating funds quickly so that victims and banking institutions could not recoup funds once the fraud was discovered. A rational juror could have credited this testimony and concluded that regularly acting in a manner inconsistent with legitimate business practices, and consistent with the money laundering trade, reflected a knowledge that the proceeds were illicit. Viewed in the light most favorable to the prosecution, see Brodie, 403 F.3d at 133, this cumulative evidence is an ample basis from which a rational juror could reasonably infer that Lawal knew the funds were illicit.

Relying on the same argument (i.e. that a rational juror could not conclude he knew the proceeds were illicit), Lawal asserts that the evidence was also insufficient to establish that he knew the criminal purposes of the conspiracy. We reject that argument for the same reasons. Evidence sufficient to support that Lawal knew he was transacting in the proceeds of a specified unlawful activity and that he, in fact, engaged in transactions involving such proceeds was sufficient to demonstrate that he knew one criminal purpose of the conspiracy was spending money laundering. And the evidence described above would permit a rational juror to conclude that Lawal knew the other

7

criminal purpose of the conspiracy and that he joined the conspiracy intending to further that purpose, concealment money laundering. United States v. Richardson, 658 F.3d 333, 340 (3d Cir. 2011).

Lawal cites testimony that loosely supports his narrative that he did not know he was part of the conspiracy—for example, Opaleye's testimony suggesting that Lawal was in the legitimate business of exporting cars to Nigeria and the expert testimony of Edward Koby Jr. that sometimes one or more money launderers in a criminal scheme do not know of the illegal objective of the criminal activity. While the jury could have drawn the inferences desired by Lawal, it was not required to do so. United States v. Claxton, 685 F.3d 300, 312 n.19 (3d Cir. 2012)

### B.    Motion for a New Trial

Lawal argues that the evidence "preponderates heavily" against the jury's verdict, again because most of the government's evidence was circumstantial, and therefore that we should grant a new trial. Opening Br. at 20. "We review a district court's denial of a Rule 33 motion [for a new trial] for abuse of discretion." United States v. Salahuddin, 765 F.3d 329, 346 (3d Cir. 2014). "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of evidence only if it believes that there is a serious danger that a miscarriage of justice has occurred — that is, that an innocent person has been convicted." Id. (internal quotations omitted).

We cannot find that the District Judge abused its discretion in denying Lawal's motion for a new trial. Nothing strikes us as arbitrary or capricious when considering the District Court's conclusion that the verdict was not against the weight of the evidence,

8

much of which is detailed above.  While Lawal argues for his favored interpretation of the evidence, it was not an abuse of discretion for the District Court to reject his position, especially when viewing the trial record as a whole.  See id. at 348.

III.    CONCLUSION

For the reasons presented above, we will affirm.